## HAZARD *against* ISRAEL.

*Saturday,*
*January 2.*

In an action against the sheriff for the miscon- duct of his officer in the execution of a writ, it is not necessa- ry to shew a particular warrant to the officer; this is neces- sary only in the case of a bailiff; but in this state

THIS was an action of trespass brought against the defend- ant, who was sheriff of the county of *Philadelphia*, to re- cover damages for the misconduct of his officer in the execu- tion of a *fi. fa.* It was tried before BRACKENRIDGE J. at *Nisi Prius* in *December* 1807, when the jury found a verdict for the plaintiff, 750 dolls. damages. The defendant now moved for a new trial on the grounds that the verdict was against law and evidence, and the damages excessive.

The facts as reported by Judge BRACKENRIDGE were as fol- lows: *Lewis* as executor of *Fuller* brought a suit against the plaintiff and *Bringhurst* as administrators with the will annexed

there are no bailiffs, their place being supplied by deputies whose authority is sufficiently shewn by proof of a general privity with the sheriff.

The sheriff is answerable for the misconduct of his deputy, whether he recognises and adopts his acts or not.

A Jury may give exemplary damages against the sheriff for the misconduct of his deputy.

If a deputy sheriff enters the house of an administrator to look for goods of the intestate, and afterwards proceeds to levy upon the goods of the administrator from whom nothing is due, he is a trespasser *ab initio.*

of *Clarkson*, in which judgment was obtained for a considerable sum, reserving the question of assets. Upon this judgment a *fi. fa.* issued for the debt, to be levied of the testator's goods, and seven pounds ten shillings costs to be levied in like manner if goods were found otherwise *de bonis propriis* of the administrators. While the execution was in the hands of *Suter* the deputy sheriff, he mentioned the circumstance to Mr. *Reed* the attorney of the administrators on record, who told him that the costs were paid to the defendant; and the fact was, that before the execution issued, Mr. *Reed* had requested the sheriff to charge the costs to his private account, to which he assented. There was no pretence that *Clarkson's* administrators had any of his goods in their hands at the time of the execution or afterwards; nevertheless *Suter* on the return day of the writ went between ten and eleven o'clock at night to the plaintiff's house, and there proceeded in a rude and insolent manner to levy upon the furniture in the parlour to the amount of seven or eight hundred dollars, and then asked for more property. Mr. *Reed*, who was called in, forbade *Suter* to levy, asked him to read the execution, told him that the plaintiff was answerable for costs only, and that they were paid. *Suter* answered that he knew his duty as well as Mr. *Reed*, and that he was levying for debt and costs; he then continued to make his inventory, and afterwards went away, but without removing any of the goods. On the next morning *Ingersoll* moved the court to set aside the levy; and in the course of the day the defendant wrote to the plaintiff that he rescinded the levy, and then made the following return to the *fi. fa.*: " No " goods of *Clarkson* whereon to levy &c. and for default thereof " levied on divers goods &c. of *Ebenezer Hazard* for the dama- " ges, which are since restored, as the amount of the said " damages were previously secured to me, and my bailiff " when the said levy was made was not informed thereof."

*Condy* for the defendant. 1. As to the act of *Suter* the officer. He was not a trespasser; he had a right to levy for the *costs*, for although the sheriff had *security* for them, they were not *paid;* and if he was dissatisfied with the security, whatever was its character, there was no legal impediment in the way of his compelling the payment of them by *Hazard*.

He had moreover a right to enter for the purpose of looking for the goods of *Clarkson*. It is in the possession of the admi-

1808.
Hazard
*v.*
Israel.

1808.

Hazard
v.
Israel.

nistrator that such goods are to be sought; and as this circumstance makes his entry lawful, he must be made a trespasser, if at all, by subsequent acts. But there was no violence; he did not remove or touch a single article of furniture; he merely put in a claim to the goods for the sheriff, and then departed. It cannot be that he was guilty of a trespass by *saying* that he made a levy, without any thing further.

2. As to the liability of the sheriff. It was incumbent on the plaintiff, in order to support this action, to shew the defendant's warrant to *Suter* for executing this writ; which was not done. The sheriff must answer for the acts of his bailiff; but the particular warrant must be produced. No general privity between them, such as is shewn by the bailiff's bond, or by his acting usually as such, will answer. *Drake* v. *Sykes*. (a)

The defendant immediately rescinded the levy made by *Suter;* and if upon notice to the sheriff of bailiff's misfeasance, the property is instantly restored, no action of trespass will lie. It would be otherwise if there was a special command by the sheriff to the bailiff to commit the trespass. But the writ is a warrant to do that only which is lawful; and unless the sheriff recognises the *unlawful* act, he is not answerable. Here the goods were not touched, and the levy was given up as soon as the sheriff had notice of it. *Saunderson* v. *Baker* (b) turns upon the sheriff's recognising the unlawful act of his bailiff; and Lord Chief Justice *De Grey* put it to the jury expressly " That if they " were of opinion that the sheriff had recognised the act of " *Bolland*, they ought to give their verdict for the plaintiff;" which they accordingly did, and said " they were of opinion " that the sheriff had recognised the act of *Bolland*."

3. The damages are outrageous. *Suter* did not touch an article but the chair he sat on; *Israel* rescinded the levy on the very next day; and the jury give 750 dollars as a compensation to the feelings of the plaintiff; for he has sustained no injury. Notwithstanding the case of *Duberly* v. *Gunning* (c) the court may certainly grant a new trial for excessive damages in cases of *tort*. *Jones* v. *Sparrows*. (d) *Ducker* v. *Wood*. (e) If there be any propriety in the rule of *Duberly* v. *Gunning*, which was an action for *crim. con.*, it can be only in application to such a case. The damages here are evidently given by way of example; and

(a) 7 D. & E. 113.        (c) 4 D. & E. 651.        (e) 1 D. & E. 277.
(b) 3 Wils. 309.          (d) 5 D. & E. 257.          6 Bac. Abr. 667.

no case can be shewn in which exemplary damages have been supported against a sheriff for the act of his bailiff, in an action of trespass for taking property. In *Lippincott* v. *Barker* sheriff of *Philadelphia* county, the measure of damages was the amount sales of the goods.

*Ingersoll* contra. 1. There cannot be a doubt that *Suter* was a trespasser. The *costs* were absolutely *paid;* and the sheriff attempts to save himself by a quibble, when he returns, that they were *secured* to him. They were settled by Mr. *Reed;* the sheriff positively accepted him as a debtor for them; they were charged to his account; and the idea of security was an after thought. But the circumstance was also communicated to *Suter* several days before he attempted a levy; it was repeated to him at the time of levy, and there was no pretence of ignorance. He even levied for *debt* and *costs;* and after taking about eight hundred dollars' worth of furniture for twenty dollars costs, he still asked for more.

The pretence of searching for *Clarkson's* goods is also set up since the fact. He did not ask for them; the parlour of the plaintiff was not the place to seek them. Though he may have used no violence to enter the house, his conduct afterwards was rude and insolent; it shewed the disposition with which he entered; and although a man whose behaviour is civil and decorous may enter my house under the presumption of general leave given to persons of such a description, yet my house is my castle; and if any one enters it to disturb my family and to insult and offend me in the bosom of it, he is a trespasser *ab initio.*

2. The sheriff is liable under the circumstances of the case. There is no necessity for producing a warrant to *Suter*. He was the under sheriff and not the bailiff; bailiffs, such as are known in *England*, are not known in the state of *Pennsylvania*. The under sheriff is the *general* servant of the sheriff; the bailiff is his servant to a *particular* purpose; hence the necessity of shewing a particular warrant to the latter, while proof of a general privity is all that is essential to establish the connexion with the former. *Drake* v. *Sykes.*

The defendant did not rescind his levy until a motion was made in court, and they were about to compel him. But this fact is not material; the sheriff is answerable for the act of his

bailiff or his deputy in the first instance; his liability does not depend upon his subsequent recognition of the act; and so is the law in *England*, and in the very case of *Saunderson* v. *Baker* as reported in 2 *W. Black.* 832. The Chief Justice, according to this report, put it to the jury that if they thought the sheriffs had recognised *Bolland's* act, there was no doubt; " and if " they had *not*, still he thought the *sheriff was bound by the act* " *of his officers.*" *Gould* Justice puts this case; trespass against sheriff for his under sheriff's executing on I. O. a *fi. fa.* sued out against I. S. and returning *nulla bona* of I. S.; and a recovery against sheriff. The true distinction is, did the officer act *by colour of his warrant?* The sheriff and all his substitutes make but one officer; and in *Ackworth* v. *Kempe (a)* in which *Saunderson* v. *Baker* came before the court, Lord Mansfield says explicitly that " for all civil purposes the act of the bailiff is the act of the sheriff," and that *Wilson's* report, that the case turned upon the recognition of the sheriff, was inaccurate.

We have in this case however what even in *Wilson* was conceded by the sheriff's counsel to be a recognition, a *return* of the levy by the defendant, who *ipso facto* acknowledges the officer and all his proceedings. 3 *Wils.* 311. 315.

3. As to damages. No doubt the court has authority to grant a new trial for excessive damages. It depends upon the circumstances of the case. But there is no reason why a sheriff should answer for his deputy in *compensatory* damages, that will not make him answerable in damages of any other kind; and whether or not in a case of such unprovoked insolence and rudeness as this, by one of a class of men usually unprincipled and without property, the court will order a new trial in consequence of these damages, is a question for their discretion. It is a case in which the jury have asserted in the person of the plaintiff, the inviolability of every man's house while he lives in obedience to the laws. *Beardmore* v. *Carrington et al. (b)*

*T. Ross* in reply, after enforcing the arguments for the defendant, was proceeding to urge the distinction between a *bailiff* and an *under sheriff;* but Chief Justice TILGHMAN said, " The case of *Drake* v. *Sykes* shews that in *England* the sheriff " is liable for his known deputy, but not for his bailiff without " warrant. Now we have no such officer as a bailiff in this state. " *Suter* was the defendant' known deputy."

*(a) Doug.* 40.                    *(b)* 2 *Wils.* 244.

TILGHMAN C. J. after stating the facts, delivered the opinion of the court.

The counsel for the defendant in support of their motion have contended that there was no trespass, because the costs were only *secured* and not *paid;* and because even if they were paid, the officer had a right to enter the house to look for goods of *Clarkson;* and after he was in he committed no violence, nor took any thing away. As to the costs, the evidence warrants the plaintiff in saying that they were paid. When the defendant had agreed to look to Mr. *Reed* for them, he had no right to levy; and so the defendant himself seems to think in his return to the *fi. fa.*; for he there assigns as an excuse for the levy, that the deputy was not informed of the security which had been given. Then as to the entry being lawful to search for goods of *Clarkson,* granting that to be the case, (concerning which however no opinion is given) the subsequent conduct of the officer in levying for costs when none were due, makes him a trespasser.

It was also contended that the sheriff was not answerable in an action of trespass for the conduct of his deputy. We are clearly of opinion that for all civil purposes he is answerable, though not criminally. There appears to be some doubt on the point in the case of *Saunderson* v. *Baker et al.* reported in 3 *Wils.* 309; but the doubt is probably owing more to the inaccuracy of the report than to any other cause. The same case is better reported in 2 *W. Black.* 832. In *Ackworth* v. *Kempe, Doug.* 40. where the case of *Saunderson* v. *Baker et al.* was considered. Lord *Mansfield* looks upon the law to be quite clear in the manner I have stated it. It is a principle not lately introduced, but founded upon ancient authorities. And most inconvenient it would be if the law were otherwise; for the sheriff's deputies are frequently men of small property, and sometimes of bad character; and the responsibility ought to rest on the principal, who has the sole power of appointing and removing them.

The last reason offered for a new trial is, that the damages are excessive. This is the only point on which there could be a doubt. A distinction has been taken between exemplary damages, and those which are only a compensation for the injury sustained. This distinction is certainly worthy of great consideration by a jury, when a principal, who has been no way to blame, is sued for the conduct of his deputy. But in point of law if the sheriff is answerable at all, he must be answerable for

1808.

HAZARD
v.
ISRAEL.

such damages as the jury, on the whole circumstances, think proper to give. In the present instance they have given exemplary damages; for the actual injury was nothing. They have thought it a necessary check to rude and improper behaviour of the sheriff and his officers. The public safety requires that implicit obedience should be paid to the officers of justice in the execution of their duty. On the other hand, the happiness of society requires that these officers should be influenced by powerful motives to avoid all acts of rudeness and wanton injury. It does appear that the quiet of the plaintiff's family was invaded at a very unusual hour of the night, without just cause; and it also appears that the officer gave unnecessary uneasiness in the course of transacting the business; and this too after he had been warned that he was doing wrong. I am well satisfied from the character of the defendant, that he was not accessary to this improper behaviour. From the view which I have been able to take of the evidence, (imperfect to be sure because I did not hear it delivered on the trial), the damages appear to me to be severe; but as the jury have thought proper to make the conduct of the defendant's deputy an object of public example, I cannot say that I think them so altogether wrong, that a new trial should be granted.

New trial refused.