The opinion of the Court was delivered by
Parsons, C. J.
A question is made on the part of the plaintiffs, whether Thornton is chargeable for the balance he states to remain in his hands, or for the unlawful conversion of some of the goods seized.
* This must depend on the fact, whether the marshal [ * 273 ] acted wantonly, and seized goods which he had no good cause to believe were necessary to satisfy the execution he held, or acted fairly, and from the benefit of a favorable sale, a balance of cash accidentally remained in his hands. In this case the officer swears that he acted honestly and fairly, taking no more goods than, according to the best estimation he could make of their value and of the charges of keeping and selling them, he judged sufficient to satisfy the executions.
He cannot on his answers be charged with the unlawful conversion of the defendant’s goods, but is chargeable as their trustee for the balance, unless from his subsequent answers he is chargeable for this balance to Day &f llsley. He does not state the day when he seized, but he sold on the 28th of February. Presuming his conduct regular, he must have seized as early as the 24th of that month, which he states to be the time when Day &f llsley sued out their writ against the defendants, and on the same day the deputy sheriff, *210 the returning officer, attached on their writ the goods, which he, the marshal, afterwards sold.
At common law, goods seized on a fieri facias cannot again be seized by the same sheriff on another fieri facias; because they must be sold on the first, and because the sheriff has already acquired in himself a special property by the seizure.
But in this state the law of attachments is different. Originally the defendant was attached by his goods to appeal, and when he appeared, the attachment was dissolved. Afterwards the attachment was continued to the judgment, when it was dissolved. And finally the property attached, if the plaintiff recovered, was to be holden by the sheriff thirty days, that the plaintiff might out of the property satisfy his execution. But if he did not deliver his [*274] execution to the officer in thirty days, the * attachment was finally dissolved. And on these principles the priority of attaching creditors is founded.
But as the defendant might be attached by his lands or goods when in fact there was no cause of action, the same officer, who had the goods in possession, might again attach them, or rather continue to hold them, to compel the defendant to appear and satisfy the judgments of other plaintiffs. Hence a second attaching creditor may have the benefit of goods, or a balance in cash, remaining after the satisfaction of the first execution.
As to lands, the practice is different. Originally, when a man was attached by his lands, the officer, to compel his appearance, ought to have taken the profits into his own hands. But in fact the defendant is never disturbed in the possession or pernancy of the profits, until the execution be levied. Different plaintiffs may therefore cause the same lands to be attached, and by different officers, as by a sheriff and by a coroner. And after enough has been taken by the first attaching creditor by appraisement, the second attaching creditor may take enough of the remainder by an appraisement, and so on to a third, until all the land be appraised.
As to goods, the officer must hold them in his actual custody, so that he alone can control the possession; they cannot therefore be attached at the suit of a second creditor, but by a writ executed by the officer who already has the possession. For another officer, in order to attach, must lawfully take the possession ; but he cannot lawfully take the goods from the officer who has first lawfully attached them, he having a special property by his prior attachment. When we speak of different officers, we do not mean different deputies of the same sheriff, for they are all servants of the sheriff, and the possession of any deputy by virtue of an attachment is the possession of the sheriff.
*211 The present question is easily settled by the application. of these principles of our attachment law. It does * not [ * 275 J appear which officer, the marshal or sheriff, first took possession. If it were material, we should direct a further examination. If the marshal first seized, the sheriff could not afterwards lawfully attach, for he could not divest the marshal of his possession and special property. The return of the officer therefore is not true, being founded on a mistake of the law. If the sheriff first attached, then the marshal, in consequence of the priority given by law to the United States, might seize them in his possession, take them from him, and entirely defeat and render void the attachment; so that either way Day If llsley have no lien upon the goods, or upon the balance in cash, by virtue of the attachment made on their writ.
The law upon this subject had been doubted in some instances, which occasioned the provisions in the sixth section of the statute of 1804, c. 83. But that section must be confined to cases where different attachments of chattels had been made by the same officer, but at the suit of different creditors. For two different officers, as a sheriff and a coroner, cannot attach the same goods at the same time; as but one can have the actual and legal possession (a).
Thornton must therefore be considered as the trustee of the defendants for this balance; and the plaintiffs may have execution against the goods, effects and credits of the defendants in his hands.

 Vinton vs Bradford, 13 Mass. 114. — Thomson vs. Marsh, 14 Mass. 269.