Windsor,
February,
1830.

WILLIAM F. MUNGER *vs.* ASAPH FLETCHER, Jun.

That, if several creditors of the same debtor attach the same property in succession, and all perfect their debts by judgements and executions, and all but the last agree to a sale before judgement, and the avails are applied to satisfy the debt of the first attaching creditor, but insufficient for that, the attaching officer is not liable to the last attaching creditor for any of such property.

That, in any event, he is only liable to the amount of the property, and that will be recovered by the creditors according to the priority of their respective *liens*.

This was an action *on the case*, against the defendant, as sheriff of *Windsor* county, for neglect of his deputy to keep certain property attached on *mesne process*. The parties agreed to the folling statement of facts in the case, upon which the county court rendered judgement in favor of the plaintiff. The defendant excepted to the decision, and the case was reserved for the opinion of the Supreme Court.

" On or about the 26th of June, 1828, *James Breck, William Breck, John Tappan, Elijah Mixer, George B. Upham* and *William F. Munger*, (the plaintiff in this action,) sued out writs of attachment against one *George Fiske*, returnable to the Dec. term then next ensuing, which writs were placed in the hands of *William Donoghue*, one of the defendant's deputies, in the order of time and priority, indicated by the names of the creditors as above stated. Upon these writs, the officer seized sundry goods, wares and merchandize, amounting, as per invoice, to about $—— and returned the same as attached in the order of priority aforesaid. Shortly after the attachment was made, the five first attaching creditors entered into an agreement with each other, (to which the said *Fiske*, the debtor, assented,) to cause an immediate sale of said merchandize, with the view to the mutual benefit of all parties ; and that the proceeds of the sale should be applied to the satisfaction of all the claims, in the order of the attachment, so far as said proceeds would reach ; and *James Breck*, the first attaching creditor, was designated as the agent of all the parties to the agreement, for the purpose of effecting said sale. Before any proceedings were had under the agreement before mentioned, the present plaintiff, who was the last of said attaching creditors, was solicited to become a party to the same, but declined.

In pursuance of said agreement, the said *Breck* as agent for the other creditors and for himself, with said *Donoghue*, proceeded to sell, at public auction, and upon the 28th, 29th, 30th and 31st days of July, and the 1st and 2d days of August, 1828, did sell all the merchandize attached on said writs. The sum for which the same was sold was three thousand five hundred and fifty-seven dollars seven cents. The sale was fairly conducted, and the a-

WINDSOR,
February,
1830.

Munger
vs.
Fletcher.

mount realized thereby was probably greater than would have been obtained had the property been retained for sale on execution. After deducting the expenses of the attachment and sale, there remained to be applied upon the claims of the creditors the nett sum of $3443 29 ; which sum was received by *James Breck*, and being less than the amount of his own demand, was retained by him to his own use.

The writs were returned at the December term, 1828 ; the actions were entered, and judgements rendered by default as follows, viz :

| | | | | |
|---|---|---|---|---|
| For *James Breck*, [in the whole] | - | - | $3630 | 31 |
| *William Breck*, " | - | - | 117 | 64 |
| *John Tappan* " | - | - | 226 | 94 |
| *Elijah Mixer*, " | - | - | 119 | 98 |
| *George B. Upham*, " | - | - | 641 | 53 |
| *William F. Munger*, " | - | - | 223 | 33 |
| Total, | - | - | $4958 | 73 |

The foregoing case is agreed to for the judgement of the Court ; and in case the plaintiff is entitled to full damages, they are agreed to be $222 33 ; to which additional interest from this date is to be added, to the time of final judgement herein.

*William G. Hunter*, attorney for plaintiff.

*C. Coolidge*, " for defendant."

*Argument for the defendant.*—In support of the exception the defendant contends,

1. That, upon the facts stated in the case made, the plaintiff is not entitled to maintain *any* action against the defendant. In an action upon the case, the plaintiff recovers for those damages only which are naturally consequential to the act complained of. If no such damages have arisen, there is no *gravamen :* it is *damnum absque injuria :* and where there is no injury, the law gives no remedy. It appears, that the plaintiff was solicited to become a party to the agreement for the sale of the property, preserving his right to come upon the proceeds, as a creditor, in the same relative order, in which his attachment had been placed—that, notwithstanding his refusal, the sale was made—that the sale was " fairly conducted, and that the amount realized thereby was probably greater than would have been obtained, had the propeaty been retained for sale on execution." It is conceded also, that the proceeds of the sale were not enough to discharge the claim of the first attaching creditor ; and, that a large amount, in favor of four other creditors, having legal priority to the present plaintiff, was left wholly unsatisfied. All this is conclusive to

show, that the plaintiff never could have obtained the slightest satisfaction of *his* claim, had all the forms of law been pursued, and that he has no reason to complain. On the contrary, by so much as was saved, by the course taken, to the general fund on which the creditors relied, by so much was the plaintiff brought nearer to the perception of some portion of that fund. Hence, it would seem to be a violation of first principles, to permit the party to found a cause of action upon an act, of which neither the design, tendency, nor effect, was to his injury. Nor can it be alledged in this case, that the plaintiff may pursue his supposed right for the purpose of *ascertaining* it. That the sale was made, as contemplated, he was apprised, by the return upon the execution in his favor, as also by the returns on all the others. Of the matters returned by the officer, on both the original and final process, no fact is put in issue by the plaintiff ; but the case admits that the sale was " fairly conducted," and that the proceeds were, in good faith, applied in satisfaction, so far as the same reached, of the claim of the first, in legal priority, of the attaching creditors. It was, therefore, with a full knowledge of all the circumstances, that the plaintiff instituted his action, the apparent object of which is to charge the defendant with the whole amount of the plaintiff's demand, upon the ground of a supposed infraction of some technical rule ; although the strongest equity is against any recovery. In this view of the case, to permit a judgement to pass for the plaintiff, for even nominal damages, would be to punish the defendant *criminaliter*, without any benefit to the plaintiff. Such an action has all the tendency, if not the design, of a suit for vexation, and is not to be encouraged.

In an action for a false return upon execution, the plaintiff having failed to prove, that he had sustained any damage, *in fact*, the court directed a nonsuit to be entered.—6 *Mass. Rep.* 242, *Levi Pierce* vs. *Geo. Jackson.*—See also 4 *Id.* 498.

2. But, should it be determined that the present action is maintainable, upon the ground of a breach of official duty, (and it is conceived that no other ground exists,) the question then arises : What is the measure of damages ?

It is contended, that, in every action upon the case, founded on either the negligence of, or false return made by, a sheriff, or other ministerial officer, the plaintiff can recover no more damages than he has actually sustained ; and this doctrine rests on both authority and principle. " If an action on the case had been brought," say the court, " it might have been enquired, what was lost by the escape ?"—2 *Johns.* 454, *Rawson* vs. *Dole.* To the same effect is cited 6 *Id.* 270, *Van Sleet* vs. *Hogeboom.* In an action

WINDSOR,
*February,*
1830.

Munger
*vs.*
Fletcher.

of debt for escape from the liberties, it was decided, that the plaintiff is entitled, *prima facie*, to his whole debt ; but it may be reduced by evidence, that the plaintiff could not have obtained the whole by coercion of the defendant.—9 *Johns.* 300, *Kellogg* vs. *Munroe* & *Brown.* The case noted above, from 4 *Mass.* 498, was an action of the case against a sheriff for not seizing, on execution, chattels which he had attached and returned on the *mesne process.* Defence, that they were the property of another than the debtor.—*C. J. Parsons*, in delivering the opinion of the court, says, " we are satisfied, that under the general issue, the defendant may prove that he was guilty of no neglect, and that the plaintiff has sustained no injury." That nominal damages only can be recovered in breach of official duty, from which no substantive injury arises.—See *Cowen*, 678.—11 *Mass.* 188, *Nye* vs. *Smith.*—1 *Saunders*, 37 n. *(2.)*—2 *T. R.* 126.—5 *Mass.* 312 and *note*, *Colby* vs.—9 *Id.* 136.—10 *Id.* 474, *Weld* vs. *Bartlett.* In case against an officer for not keeping goods attached by him, so that they might have been taken in execution, although the officer had neglected his official duty, yet, it appearing that, if he had adhered to it, the plaintiffs would have derived no benefit from their attachment, he was held to be entitled to nominal damages only.—*Rich et al.* vs. *Bell*, 16 *Mass.* 294.

*Argument for the defendant.*—The creditor's right is under the operation of law only ; it is not affected by any consent of the debtor. 1. If the goods are taken on the execution, then he has the direct effect of the lien, the goods themselves. 2. If the sheriff permits them to be eloigned, he has an indirect effect of the lien, by action against the sheriff, which stands in place of the goods. And a recovery against the sheriff, by a creditor, for the value of the goods, is a bar to all subsequent attaching creditors, the same as though the goods were sold and all applied on the first attaching creditor's execution. But, in this case, the goods were suffered to be eloigned by the creditor's consent : he, therefore, could have no action against the sheriff ; and the legal effect of the sheriff's return on *Breck's* execution is *nulla bona*, by consent of *Breck.* The acts of the sheriff in applying the avails on the execution, does not validate the act of sale. It has no other effect than to satisfy the execution by way of the debtor. The case in principle is, that of a debtor delivering the goods to the creditor in satisfaction of his debt. The act of sale, therefore, rendered it impossible for the creditor to perfect his lien, 1. to the goods ; they are converted. 2. to the remedy against sheriff : that is gone by consent. . The judgement was a nugato-

WINDSOR,
February,
1830.

Munger
vs.
Fletcher.

ry act. Why take the judgement for form sake when it could not be executed? The execution was also nugatory for the same reason. Why then should there have been any subsequent proceedings? The same reason might then have been given as now, viz : You are no loser, because, had the lien been legally perfected, there would have been no property for you. The lien was destroyed when the goods were converted ; and it is not restored by the act of *Breck* or the sheriff in applying the avails. This is the act of the party which he may or may not do ; not of the sheriff officially. The second creditor is entitled to the surplus ; but there is no legal mode of ascertaining the value, but by a sheriff's sale at auction on execution. Any other auction sale is not evidence of value. Plaintiff is not to be put to a trial *in pais* to ascertain the value. There may be cases in which this course would be convenient ; but that is a question of legislation, and the legislature has repeatedly refused to interfere. Suppose the sale was without the consent of the debtor, the principle would not be different. The cases in *Massachusetts* adopt equitable principles which have never been applied to attaching creditors. The consequences would be injurious. It may lead to collusion as to the value. 1. A private sale must be as good as an unauthorized public sale. 2. The evidence of value must, in cases of unauthorized conversion, rest within the power of the creditor (converting) and debtor. 3. Other creditors put to the inconvenience of hunting up testimony of value. So likewise, as to quantity. Goods are attached in general terms, without a perfect description of quantity. This disposition of goods is not contemplated in our law, nor to be encouraged. And the argument which supports this sale, will dispense with all subsequent proceedings, judgement and execution, leaving every thing *in pais*, when a second creditor sues : viz. if all is honest, second creditor has lost nothing, and why put the first to any trouble if he can get his pay ?

HUTCHINSON, J. delivered the opinion of the court.—If the plaintiff has sustained any injury, by the defendant's neglect to preserve for him the property attached on his writ, he must recover for that injury. If it is certain that he sustained no injury, he is not entitled to recover. The position assumed by the plaintiff is, that he obtained a lien upon the property, subject to the five prior attachments, and that no disposition of the property, in whole or in part by agreement of the other creditors and the debtor, can affect his lien. This is so far correct, that we must examine how the contract in question has varied the disposition of the property.

WINDSOR,
February,
1830.

Munger
vs
Fletcher.

The agreed case shows, that the plaintiff was the sixth attaching creditor upon the same goods ; that *Breck's* debt, first put on, was of a greater amount, than was in fact realized from the sale of the goods ; that all these creditors entered their actions in court, and obtained judgements for the amount. The papers referred to in said agreed case shows, that the executions were issued and delivered out in season to preserve the lien on the property, created by the several attachments. And that the officer has endorsed on *Breck's* execution the amount of the avails of the sale of all the goods attached, and interest received by him on the same. But his endorsement, instead of stating an advertisement and sale, after the execution was delivered to him, states the sale at given days in July and first of August preceeding, and that this was by agreement of those, who appear to be all the persons interested except the plaintiff. This marks the only deviation from a regular and legal pursuit of *Breck's* lien. Had the avails been applied in payment of *Breck's* debt without its being perfected by a judgement, this would have been substituting an agreement for the attachment, and would have destroyed the lien. The debt of *Breck*, and its amount, have been established just as they would have been, if no agreement had been made, and the lien kept good by his execution, and delivery of the same to the officer.

The only ground of complaint of injury to the plaintiff is, that the property might have been sold for more on the execution at the time the officer had it, than when it was in fact sold. This, if supported by fact, would be a just ground of complaint. But, this is answered by the facts, to which the parties have agreed, to wit : " that the sale was fairly conducted, and the amount realized probably greater than would have been obtained by sale on execution."

It seems that the five creditors agreed to the sale, from a consciousness, that there was not sufficient property to pay all their debts, and from a wish to save the expense of keeping, and the loss by the perishing of the goods. And, after all this caution, the judgements of these five creditors, who thus agreed to the sale, amounted to nearly thirteen hundred dollars more than was realized from the goods. The facts, agreed to in the case, seem to have disposed of all the uncertainties, which might attend a case, where the action brought was settled, by a sale of the property in payment of the debt, before judgement. These creditors kept their lien good upon the property. If their officer had neglected to apply the avails of the goods on their executions, according to their priority, each might have sued him for his neg-

WINDSOR,
*February,*
1830.

Munger
*vs.*
Fletcher.

lect, just as though no such agreement for the sale had ever been made : the action would have been in the same shape, and contained the same recitals. And all the use, the officer could ever have made of that agreement in his defence, would have been upon the measure of the damages to be recovered against him.— He might contend, that they should be content with the sale as to the amount they would recover.

Thus far we have treated the subject as if the agreement, for the sale of the property before judgement, formed an important branch of this defence.

But, there is another view that should not be forgotten. Suppose the Sheriff, having made the attachments for the six creditors upon the same property, had sold the property at private sale, or public auction, or converted it to his own use, without any agreement or consent of the attaching creditors, and they had pursued their actions to judgement and execution, as they have now done, what would have been their remedy ? It would have been, that each might have sued him as the plaintiff now has, and, amongst them all, recovered the value of the property as the jury should assess it ; and this value must have been applied for the benefit of those creditors, according to their priority of lien ; that is, if the jury should fix the value as this case fixes it, *Breck* would have recovered the whole value, in part satisfaction of his debt, and each other action must have failed, and the defendant recovered his cost. As the other creditors have all kept their lien good, the same as the plaintiff has his, by judgement and execution, and delivery to the officer, if the plaintiff would urge a different value from the avails of said sale, he must expect the amount of the other five executions to be first deducted, and be content with the balance only. But no such question is urged ; and, in no view presented by the case, has the plaintiff sustained any injury, from any neglect of which he complains. We consider that there is error in the judgement of the county court, and the same is reversed, and judgement must be entered for the defendant to recover his cost.

                                        Judgement reversed.

*Hunter,* for the plaintiff.
*Coolidge,* for the defendant.