MARCH TERM, 1844. 619

Burroughs v. Wright et al.

After *oyer* of the plaintiffs' account the defendant, Hopkins, pleaded in abatement to the jurisdiction of the court, alledging that the *debit* side of the plaintiffs' account exceeded forty dollars; to which plea the plaintiffs demurred. The court held the plea sufficient, and dismissed the suit; to which the plaintiffs excepted.

*Bartlett & Fletcher* for plaintiffs.

*George C. Cahoun* for defendant.

----

SETH BURROUGHS *v.* WALTER WRIGHT, MOSES KITTREDGE and JAMES RAMSAY.

When property has been attached by one officer, and is in his custody, a return by another officer, who holds a writ of attachment in his hands against the owner of the property, that he has attached the same property, subject to the first attachment,—still leaving the property in the possession of the first attaching officer,—will create no lien upon the property.

The advertising of property, previous to its sale on execution, is required for the benefit of the debtor, and to protect his rights; and if he waive that provision, and consent to a sale without advertisement, the sale will be legal.

Where an officer, having attached property, levied an execution upon the same property, subject to such attachment, and the execution in the suit in which the attachment was made was put into the hands of another officer in season to charge the property, and the first officer proceeded and sold the property on the execution in his hands, and then tendered to the second officer the amount of the execution which he held, together with his fees, it was held that the second officer could not refuse such tender, and commence an action against the first officer for his proceedings with the property.

Trespass for taking from the possession of the plaintiff certain personal property, described in the plaintiff's declaration. Plea, the general issue, with notice of special matter, and trial by jury.

On trial it appeared that the plaintiff, in 1843, was constable of St. Johnsbury, and the defendant Wright was a deputy sheriff for the same county. On the 10th of April, 1843, four writs of attachment against James Ramsay, in favor of Jacob C. Bean, John Bacon, John Kelly & Co., and the Farmers' & Mechanics' Co., were sued out, and the three first writs were put into the hands of Wright to serve, and the other into the hands of the plaintiff. Wright attached, upon the three writs which he held, among other property, the articles sued for in this action, and took the same into his custody. The plaintiff attached the same articles of property, now sued for, upon the writ which he held in favor of the Farmers' & Mechanics' Co., but did not take them into his possession; he returned that he had attached them subject to the three attachments made by Wright, as above mentioned.

The defendant Wright, at the same time, had in his hands an execution against the said Ramsay in favor of one Kittredge, for the sum of $919.05. This execution he also levied upon the property in question, then being in his possession, and returned that he had done so subject to the three attachments made by him, as above detailed. On this execution, on the 5th of May, 1843, the execution debtor, Ramsay, wrote and signed a request to Wright to sell the property on said execution, and thereby agreed to take no advantage of him for not advertising it according to law.

Burroughs *v.* Wright et al.

Judgment was rendered against Ramsay in the four suits in which the attachments were made, as above mentioned, and the four executions thereon were put by the creditors into the hands of the plaintiff for collection.   The three executions, which issued in the suits in which the attachments were made by Wright, amounted to $47.50.   On the 22d of April, 1843, the plaintiff, having the said executions in his possession, demanded of Wright the property attached in the suits in which they issued, and afterwards, on the same day, took the property from the place where Wright had deposited it, without the consent of Wright.

On the 5th day of May, 1843, the defendant Wright, assisted by the other defendants, took the property in question from the place where it had been deposited by the plaintiff for safe keeping, and on the same day Wright sold the same property at auction, in pursuance of the request of Ramsay, above mentioned.   Wright then tendered to the plaintiff the amount of the three executions, in favor of Bean, Bacon, and Kelly & Co., being $47.50, together with the plaintiff's fees upon the same,—which the plaintiff refused to receive.

The court instructed the jury that the plaintiff, having the executions in favor of Bean, Bacon, and Kelly & Co. in his possession, might, with or without the consent of Wright, possess himself of the property attached in the suits in which the said executions issued ; that Wright, by selling the property upon the execution in favor of Kittredge, as he did, destroyed the lien which he had by virtue of of that execution ; and that the plaintiff, having in his possession the four executions delivered to him, and having obtained actual possession of the property in question, might maintain this action against Wright, who had shown no other claim than the one by virtue of the execution in favor of Kittredge.

The jury returned a verdict for the plaintiff, for the amount of the four executions held by him.   Exceptions by defendants.

*E. Paddock* for defendants.

The court decided, that Burrows, having the three executions, had a right to take and possess himself of the property attached on the writs, *with or without* the consent of Wright ; the court also decided, that the sale of the property on Kittredges' execution against

Ramsay, by agreement of the creditor and debtor, without being posted the full fourteen days, was illegal, and destroyed his lien upon the same by virtue of the execution in favor of Kittredge.

We think that neither of these decisions can be supported; the first cannot be carried out in practice; the second, if it had not been settled the other way in the case of *Munger* v. *Fletcher*, 2 Vt. 524, would operate in a manner too inconvenient and injurious to be adopted.

We say, then, that to permit or sanction an officer to attach property in the hands and possession of another officer is irregular and tends to confusion.

1. The attaching officer is always liable for the property taken, either to the plaintiff, if he recovers in the suit, or to the defendant, if *he* recovers; and no other officer is permitted to attach such property out of his possession. This subject was thoroughly investigated and lucidly treated by *Judge Parsons*, in *Watson* v. *Todd*, 5 Mass. 271, and has been treated as the settled law in Massachusetts ever since. *Vinton* v. *Bradford*, 13 Mass. 114. *Thompson* v. *Marsh et al.*, 14 Mass. 269. Again, I understand the law, as above stated, to be fully recognized as the law of this state, by *Judge Hutchinson*, in *Adams* v. *Abbott*, 2 Vt. 387. See *Sawyer* v. *Middletown*, 10 Vt. 238.

The facts in this case compare with those in *Blake* v. *Shaw*, 7 Mass. 505, where the court decided that it would be a *mis-feasance* in an officer to deliver up goods, holden by attachment, to the creditor, to be charged in execution by another officer.

If the court in this case sustain the decision of the county court, it is not easy to determine the number or character of the vexatious questions which may arise in practice; we will endeavor to point out a few. 1. Supposing the three executions had been delivered to three separate officers, (for it is a supposable case,) which of the three, or shall each, have the right of demanding the property of the attaching officer, and each creditor have his action, if it be not delivered? 2. If the property be indivisible, like a horse, how shall it be determined which of the three shall demand, and receive, and sell the property? 3. If the property be divisible, shall a portion be meted out to each officer? 4. If the property evidently will fall short of satisfying all, who shall be judge in making the division?

5. And if there shall be a surplus after satisfying the three executions, how would all or either of them get it back into the hand of Wright, to be applied on Kittredge's execution, without a repeal of the statute, directing it to be paid back to the execution debtor?

6. If there shall be a diminution of the property, who shall be made chargable for it?

It does not appear from the bill of exceptions, that Burroughs ever had possession, or had ever seen the property in question, until he forcibly took it from Kittredge, into whose hands Wright had placed it for safe keeping; his possession then was *tortious*, and would not enable him to sustain his action, even if Wright had lost his *lien* by the sale of the property; but he had not lost it when he retook the property,—which was before the sale; but if he had lost his lien, yet the law would not suffer the property to be taken or attached out of his hands before the lien was lost,—and the very act which determined the lien, conveyed the property to the purchaser by a perfect title.

Aside from this, we consider the law as settled in this state that property under an attachment may be sold by the execution creditor and debtor agreeing and directing it,—especially if the rights of no one are injured by it; and it is most manifest that the rights of no one were abridged, or in any way affected, by the sale; for out of the sales money Wright reserved enough to pay off the three executions which were forward of Kittredge, and the officer's fees on the same, and tendered both to Burroughs before suit.

*Bartlett & Fletcher* for plaintiff.

The plaintiff having the four executions for collection, and having obtained the possession of the property, had the same right to retain that possession that Wright would have had, had the executions been put into his hands to collect. Wright was bound to keep the property for the period of thirty days after the judgments, that the same might be charged in execution either by himself, or by any other officer, to whom the executions might be delivered.

The defendants justify the taking and sale of the property on the 5th day of May, 1843, under the execution in favor of Kittredge. The attachment and sale of the property of the debtor, whether on *mesne* process, or final process, is wholly regulated by statute.

There is no such proceeding known in our statute as a sale of property on execution by agreement of parties. Kittredge never attached the property on *mesne* process and if he justifies the taking and sale of the property under the execution, he must show that the property was advertised for *public sale* for the period of fourteen days, and that the property was regularly sold on the execution agreeable to law. The sale of the property was not a sale on execution, not being done as the law requires, and in a legal sense was a mere private sale.

The defendants contend that the lien of Kittredge was prior to that of the Farmers' & Mechanics' Co. Admit this for the sake of the argument, and it does not relieve the defendants. For if Kittredge had a lien prior to that of the Farmers' & Mechanics' Company, and he took the property out of the custody of the law upon the strength of a contract with Ramsay, and sold it at private sale, this dissolved his lien, and the lien of the Farmers' & Mechanics' Company then had the precedence, and the Farmers' & Mechanics' Co. had a right to have their debt satisfied, next after the satisfaction of the debts of Bean, Bacon, and Kelly & Co., for Kittredge's lien was waived. But what is still farther a conclusive answer to this part of defendants' argument is, that there were liens on the property, admitted to be prior to that of Kittredge's, by virtue of which Burroughs had a right to retain and hold possession on the 5th of May, 1843. The defendants committed the trespass on the 5th of May, 1843, and so soon was the right of action perfect and complete in the plaintiff, and the trespass was not cured by a tender on the 6th of May of the amount of the three first claims.

The plaintiff contends that, in actions in form "*ex delicto*," there can be no tender. For in torts to personal property, the property has no ascertained value, and the plaintiff may recover in damages beyond the estimated value.

The opinion of the court was delivered by

HEBARD, J. One principal question in the case is, whether the plaintiff, by virtue of the writ in favor of the *Farmers' & Mechanics' Co.*, acquired any *lien* upon this property. And in relation to that we are clear that he did not. The case of *Watson* v. *Todd*, 5 Mass. 271, is a leading case upon this point, and has been followed

Burroughs *v.* Wright et al.

by subsequent decisions in Massachusetts, and has been recognized as law in this state, and is decisive of this part of the case. At the time when the plaintiff pretended to attach that property, it was already attached and in the custody of Wright. No *lien* can be created by attachment without an *actual taking*, or in some way having the control of the property, excepting in case of certain kinds of property, in which the statute has provided another mode of attaching. In this case the plaintiff had no *right* to the custody of the property, and did not have it in fact. The *Farmers' & Mechanics' Co.*, to have acquired a *lien* upon the property, should have put their writ into the hands of the officer who had the legal custody of it. The property being rightfully in the *possession* and *custody* of the defendants, the plaintiff committed a trespass in taking it from them, and of course the defendants had a right to re-possess themselves of it, and by so doing they were not trespassers.

The other branch of the inquiry is in relation to the manner of disposing of the property. The property was not posted fourteen days, as required by law, but was sold by the consent of Ramsay, the debtor. The law requires the property to be posted for the benefit of the debtor and to protect his rights, and when he waives that protection, and consents to a sale without its being posted, the sale will be legal. The case of *Munger* v. *Fletcher*, 2 Vt. 524, is authority for this, and is a much stronger case. In that case, one of the attaching creditors, who had a *lien* upon the property, refused to enter into the arrangement, but the sale was held to be legal. In this case, the *Farmers' & Mechanics' Co.*, the only creditors of Ramsay who have any occasion to complain, had no *lien* upon the property, and no legal interest in the disposition of it. The first three attaching creditors had no farther interest in the property than to the amount of their judgments, and those judgments the debtor, or any one acting for him, had a right to pay, and thus discharge their *lien* upon the property. Before the commencement of this action Wright *tendered* to the plaintiff, he having the executions for collection, the full amount of all those judgments and officer's fees. This the debtor had a right to cause to be done, and it was the duty of the officer having the executions to have received it; and his refusing to receive it gives him no right of action.

The charge of the court we consider erroneous, and the judgment is reversed.