### ARGUED AND DETERMINED

##### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

### AT AMERICUS,

### JULY TERM, 1847.

---

No. 1.—JOHN D. MATTHIS, plaintiff in error, *vs.* JAMES POLLARD, defendant in error.

[1.] The appointment of a deputy sheriff may be made by parol; and the admissions of the principal, his recognitions of the acts of his deputy, or holding him out to the world in any other way as such, would be sufficient evidence of his appointment.

[2.] The sheriff is liable for money collected by his deputy, no matter how the execution upon which it is paid comes into his hands.

[3.] Money paid upon an execution in the hands of the sheriff or his deputy, discharges the defendant.

Rule against Sheriff. Tried before Judge ALEXANDER, in Talbot Superior Court, March Term, 1847.

At the March adjourned term of the Superior Court of Talbot County, 1847, James Pollard, the defendant in error, obtained a rule Nisi against the plaintiff in error, reciting that James R. Giddens, the former deputy of said plaintiff, on the 8th of March, 1846, collected the sum of $40, on a writ of *Fieri Facias*, sued out from the Superior Court aforesaid, at the instance of said defendant, against Stephen J. Phillips and Thomas H. Dozier security, and requiring said plaintiff to show cause why he should not pay to James Pollard, or his attorney, the said sum of $40. To which rule John D. Matthis answered, that the writ of *fi. fa.* was delivered to Thomas U. Robinson, a former sheriff, on the 5th of May, 1843, as appears from the execution docket, and admits it may have been delivered by Robinson to James R. Giddens, his successor, and he, the said Giddens, might have received, on the

18th March, 1846, as deputy sheriff, $40 on said *fi. fa.*, as appears from his receipt thereon of that date; and further admits, that Giddens was at that time his deputy. He also states, that Giddens was his predecessor, as sheriff of Talbot County, and that he (Giddens) never turned over to him, as his successor, the said *fi. fa.* by indenture, schedule, or otherwise, and it never came into his hands as sheriff, nor was it ever delivered to him by any person, or in any manner, since he came into the office of sheriff. That said *fi. fa.* was never returned to the clerk's office after it had been delivered to Robinson on the 5th March, 1843.

After hearing the plaintiff's answer, Judge Alexander decided, that the possession of the *fi. fa.* by James R. Giddens, when he was deputy sheriff of the plaintiff in error, and a payment by the defendant in *fi. fa.* to him, was a satisfaction of the *fi. fa.*, and fixed his, the said plaintiff's, liability as sheriff, to the plaintiff in *fi. fa.*, and therefore granted a rule absolute against him. To which decision the said Matthis excepted.

L. B. SMITH, for plaintiff in error, cited *Hotchkiss*, 515; 2 *Bacon Abr.* 517; *Hempsted* vs. *Weed*, 20 *John. R.* 64; *Larned* vs. *Allen, et al.*, 13 *Mass. Rep.* 295; 9 *Petersdorff Abr. t. p.* 62.

WORRILL, represented by HILL, for defendant.

*By the Court*—NISBET J. delivering the opinion.

An execution was placed in the hands of Robinson, sheriff of Talbot County, and by him turned over to Giddens, his successor. Giddens' term expiring, the present sheriff, Matthis, was elected, and appointed Giddens his deputy. The execution which Giddens received, as sheriff, was not formally turned over by him to Matthis, but retaining it, as Matthis' deputy, he collected the money due upon it. Matthis, the sheriff, was ruled for this money, and held liable. We are invited by the bill of exceptions and writ of error to review that decision. We think the decision was right.

[1.] By statute in this State, the sheriff is authorized to appoint his deputies. *Hotchkiss*, 515. No mode of appointment is prescribed by law; and hence he may appoint by parol, or by a formal writing. The sheriff's admissions, or his recognition of the acts of the deputy, or his holding him out to the public as his

deputy, in any way, would be proof of an appointment. 1 A. K. Marshall, 44. Both by our own statute and at common law, the sheriff is liable civiliter for the acts of his deputy. By our statute he is made liable for the defaults and misfeasance of his deputies. Hotchkiss, 515; 1 Doug. 43, note 3; 2 Term. R. 148; 2 W. Blackstone R. 832; 3 Wils. 309; 5 Mass. 271; 9 Id. 112; 13 Id. 114; 2 McCord, 410; 1 Binn. 240; 3 H & M. 127.

By the act of 1799, the sheriff is required, at the expiration [2.] of his term, by indenture and schedule, to turn over to his successor "all such writs and processes as shall remain in his hands unexecuted;" and if he fails, or refuses, to turn over such writs and processes, he is liable in damages to the party aggrieved. Hotchk. 516. The object of this statute is to secure the rights of the parties interested in the execution of writs and processes; for, as the sheriff cannot execute a process after the expiration of his term of office, without such requirement, the execution might be delayed or perhaps finally prevented. Again, its object is to protect the sheriff going out of office; for if he does turn over, as required, such writs and processes, after that is done, he is discharged from all liability, except such as may have previously accrued. And the indenture and schedule is evidence of the transfer having been made.

It is contended that, inasmuch as Giddens in this case, who was the predecessor of Matthis, did not, by indenture and schedule, turn this execution over to him, he, Matthis, is not liable to pay the money. In other words, he is only liable for himself and deputy for the execution of such writs and processes as came to him by indenture and schedule. We do not so think. The law does not inhibit the receipt of writs and processes by other modes. No matter how an execution comes into the possession of the sheriff, if he gets it at all, he is bound by the requirements of his office, by his oath, and by the obligations of his bond, to execute it; and if he fails to do so, or is guilty of misfeasance or default in any way, both he and his sureties are responsible. The object of the act of 1799 being as stated, the prescription of one mode of turning over, does not exclude others. 5 Gill & Johns. 406.

Again, it is said, that Matthis is not liable for the default of his deputy in this case, because the execution did not come into the possession of his deputy, through him. That is to say, he is liable for the acts of his deputy only upon such writs and processes as he delivers over to his deputy, and which came to him from his

predecessor. We hold, that the possession of the writ by the deputy, whether original or derivative, is the possession of the principal. The converse of this rule would destroy at once the character of sheriff, which attaches to the deputy—would annul his function, to a great extent, of collecting officer—would endanger the rights of parties plaintiff and defendant, and so limit the liability of the principal as to make scarcely any protection. The writ may be, by law, executed by the sheriff or *his deputy*. It is the duty of the deputy to receive it, and when it is received, no matter how or from whom, the official liability attaches. Whether the deputy receives the writ from the predecessor of his principal, or from his principal, from the clerk, or the plaintiff or his attorney, through the mail from abroad, or in any other way, he is liable, and so is his principal. *Hotchkiss,* 515. It is claimed that this case is without all such recognised rules, because Matthis' deputy, Giddens, was also his predecessor. As the *predecessor* he received the execution, and as *deputy* retains it; he therefore does not hold it as deputy, and is not liable as such, nor is his principal liable for him. This reasoning is too subtle for any practical purpose. It is not at all defensible. *Eo instanti* in which Matthis was commissioned, the official functions of Giddens ceased. At that time the writ is in his hands as an unofficial person ; he retains it until he is appointed deputy, and so soon as that is done, the law makes tradition of it, from Giddens the unofficial man, to Giddens the deputy sheriff.

[3.] Under this state of facts, it is argued that Giddens would be liable, and also his sureties, for this money, as principal sheriff. As sheriff he and his sureties are liable only for such default or misfeasance as occurred before his successor was commissioned, and not afterwards. The record discloses no default or misfeasance during his term of office. None is pretended. Who can doubt but that the payment of this money to Giddens, after he was appointed deputy to Matthis, would be a prevailing plea for the sureties of Giddens in an action against them on his bond ? There can be no doubt about it. Upon the reasoning of the counsel, the payment of this money to Giddens, after he became the deputy of Matthis, is no satisfaction of the execution, and the defendant in execution could be made to pay it again ; either this would be true, or the plaintiff in execution must lose his money, for, upon their reasoning, he has no remedy against Matthis and his deputy, and it is very clear he would have none against Giddens, as

principal sheriff, and his sureties. They would turn this plaintiff over to his action for money had and received, against Giddens as an unofficial person—and he is insolvent. How impotent, upon this view of the subject, are all the labours of the law, to protect parties against official incapacity or infidelity! Such consequences show the unsoundness of the positions taken by counsel for the plaintiff in error. A payment to an officer, having the execution in his hands, is a discharge of the defendant. *In Foster* vs. *Brown*, 1 *Bailey, S. C. R.* 221, Johnson, Justice, pronounces as follows : " Having the plaintiff's execution in his hands, Bates, as sheriff, was clearly entitled to receive the money; and, having done so, the defendant is discharged." It is enough for the defendant to know that the officer, holding the execution, is either the sheriff or a deputy—it is no part of his duty to inquire how he came into possession of it.

Let the judgment of the Court below be affirmed.