Herbert E. **BRETT**, David Hannah, Wayne D. Hattaway, and Jerry O. Hudson, Plaintiffs,

v.

**JEFFERSON COUNTY, GEORGIA, and Charles Gary Hutchins, individually and in his official capacity as Sheriff of Jefferson County, Georgia, Defendants.**

**Civil Action No. CV193–144.**

United States District Court, S.D. Georgia, Augusta Division.

April 1, 1996.

Marcia Borowski, Megan Gideon, Stanford, Fagan & Giolito, Atlanta, GA, John Paul Batson, Augusta, GA, for plaintiffs.

Michael Allen O'Quinn, Margaret E. Sanders, Barnhart, O'Quinn & Williams, Atlanta, GA, for defendants.

## ORDER

BOWEN, District Judge.

Before the Court is Defendants' Motion for Summary Judgment. For the reasons stated herein, the motion is **GRANTED**.

## I. BACKGROUND

Plaintiffs are former deputy sheriffs of Jefferson County, Georgia. They filed this action pursuant to 42 U.S.C. § 1983, contending Defendants violated their First, Fifth, and Fourteenth Amendment rights under the United States Constitution when they were terminated from their employment. Plaintiffs assert similar state law claims based upon the Georgia Constitution. Plaintiffs also allege a cause of action under the Comprehensive Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. §§ 1161, et seq.[1] Defendants seek summary judgment against Plaintiffs on the federal constitutional claims and the COBRA claim.

The operative facts are as follows. Early in 1992, Zollie Compton, then Sheriff of Jefferson County, Georgia, announced that he would not seek reelection in November. At the time, each Plaintiff had served as a deputy sheriff in the Jefferson County Sheriff's Department for a number of years.

Following Sheriff Compton's announcement, three Democratic candidates announced they would seek election as Sheriff of Jefferson County. Those candidates were Defendant Charles Gary Hutchins, Plaintiff Wayne D. Hattaway and Plaintiff Jerry O. Hudson.[2] Both Plaintiffs Herbert E. Brett and David Hannah actively campaigned for Plaintiff Hudson during the Democratic primary and run-off elections. Plaintiff Hudson was Defendant Hutchins' primary opponent. In August, Defendant Hutchins defeated Plaintiff Hudson in the Democratic run-off. The Plaintiffs did not support Defendant Hutchins in the general election. In November, Defendant Hutchins was elected Sheriff of Jefferson County.

There is some dispute about the nature of Plaintiffs' campaign activities in the primary and general elections. The parties' respective allegations in this regard are presented exhaustively in the record and, for reasons that will be evident, I need not recite and review the particulars of each side's version of events. The summary judgment evidence will be explored as necessary and in appropriate detail later. For now, it is sufficient to note that Defendants contend Plaintiffs' activities during the primary and general elections reflected more than a lack of support for Defendant Hutchins. Defendants maintain that Plaintiffs actively campaigned against Hutchins, often in a disparaging and hostile manner.

Having prevailed in the election, Defendant Hutchins wrote each Plaintiff on November 24, 1992, to advise him that his employment as a deputy with the Jefferson County Sheriff's Department would end with Sheriff Compton's term of office on December 31, 1992. Plaintiffs received no pre- or post-termination hearing in connection with the decision not to reappoint them as deputy sheriffs. Defendant Hutchins became sheriff on January 1, 1993.

Plaintiffs allege their termination without a hearing violated their procedural due process rights under the Fifth and Fourteenth Amendments.[3] Plaintiffs also allege that Defendant Hutchins violated their First Amendment rights by terminating them for actively campaigning against him. Defendants seek

1. Upon its request, the Court has received supplemental briefs from both parties addressing the merits of the COBRA claim. After due consideration of these briefs, the Court will proceed to review the merits of a summary judgment motion on this claim.

2. By a County resolution, Plaintiffs Hattaway and Hudson were granted leaves of absence during their campaigns.

3. The Court notes Plaintiffs' withdrawal in their summary judgment pleadings of their substantive due process claim.

summary judgment on these two constitutional claims.

## II. ANALYSIS

### A. *Requirements for Summary Judgment*

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In this case, the *non-moving* party has the burden of proof at trial. Thus, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial, *see Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 606–08 (11th Cir.1991) (explaining *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the non-moving party cannot meet its burden at trial is *not* sufficient, *id.* at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608.

If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross,* 663 F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving parties—and, if necessary, the non-moving parties—have carried their burden as set forth above. *See Clark,* 929 F.2d at 609 n. 9.

### B. *Summary Judgment in this Case*

■ Plaintiffs assert their federal claims pursuant to 42 U.S.C. § 1983. Section 1983 creates a federal remedy for a deprivation of any federal right. *Wideman v. Shallowford Community Hosp., Inc.,* 826 F.2d 1030, 1032 (11th Cir.1987). An actionable § 1983 claim requires proof of a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States and that the deprivation was by a person or persons acting under color of law. *Id.* That Defendant Hutchins acted under color of law is undisputed. Plaintiffs contend that Defendant Hutchins, acting under color of law, violated their First, Fifth, and Fourteenth Amendment rights.

In this summary judgment motion, Defendants contend that Plaintiffs had no property interest in their position as sheriff's deputies, and therefore Plaintiffs were not denied procedural due process. Defendants further contend that the sheriff's interest in running an effective and efficient law enforcement agency outweighs Plaintiffs' First Amendment interests. Finally, Defendant Hutchins argues he is entitled to qualified immunity on all claims.

### Plaintiffs' Procedural Due Process Claim

■ There is no dispute that Plaintiffs were not afforded a pre- or post-termination hearing. To establish a due process violation, however, Plaintiffs must show they had a protected property interest. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Thus, the issue is whether Plaintiffs had a protected property interest in their positions as deputy sheriffs of the Jefferson County Sheriff's Department

as determined by the applicable state law. *See id.*

Under Georgia law, a public employee has a property interest in continued employment if the employee can be terminated only for cause. *Brownlee v. Williams,* 233 Ga. 548, 212 S.E.2d 359 (1975). Because O.C.G.A. § 15–16–23 [4] confers upon Georgia sheriffs complete and exclusive discretion to appoint deputies, traditionally, sheriff's deputies serve at the sheriff's pleasure. *Wayne County v. Herrin,* 210 Ga.App. 747, 437 S.E.2d 793 (1993).

In 1983, the Georgia Constitution was amended to provide that "[t]he General Assembly may by general law authorize the establishment by governing authorities of civil service systems covering county employees or covering county employees and employees of the elected county officers." Ga. Const., Art. IX, Sec. I, Par. IV. Consequently, the General Assembly passed O.C.G.A. § 36–1–21 in 1986, which authorizes county authorities to establish civil service systems for county employees. Thus, county employees covered by a civil service system that provided for termination only for cause would have a property interest in continued employment. *See, e.g., Brownlee,* 233 Ga. 548, 212 S.E.2d 359.

Section 36–1–21(b) provides that a county's civil service system would apply only to departments subject to the jurisdiction of elected county officials, such as the sheriff's department, if the elected official makes written application for such action and the county governing authority approves of such application by ordinance or resolution. O.C.G.A. § 36–1–21(b).

According to the record, Jefferson County's Personnel Manual was drafted in April 1984. There is some question about whether the Personnel Manual was ever officially and formally adopted by the County as a civil service system, but there is no dispute that the materials were distributed to and used by Jefferson County officials, including the Sheriff. On October 24, 1989, Sheriff Compton signed a document entitled "Jefferson County Sheriff Departments— Rules and Regulations," which specifically stated that the Jefferson County Sheriff's Department would follow the grievance procedures as described in the Jefferson County Personnel Manual. Sheriff Compton also appeared before the Jefferson County Board of Commissioners and requested that Sheriff's Department employees be made subject to the Personnel Manual.

The technical requirements of O.C.G.A. § 36–1–21(b) were never satisfied, however. Section 36–1–21(b) requires that (1) the elective official make *written* application that the personnel of his or her department be made subject to the County's civil service system *and* (2) that the governing authority formally grant the written request by ordinance or resolution. Pretermitting the question of whether the Personnel Manual was officially enacted as Jefferson County's civil service system, Sheriff Compton never made written application to subject his staff to the civil service system and the Board of Commissioners did not approve his oral request by resolution or ordinance. Therefore, Plaintiffs cannot show they had a property interest in their jobs as sheriff's deputies, precluding their procedural due process claim. *See Wayne County,* 210 Ga.App. at 753, 437 S.E.2d at 799 (statutes that derogate the sheriff's common law powers must be strictly construed) (citations omitted).

Nevertheless, Plaintiffs argue that the distribution and use of the Personnel Manual, Sheriff Compton's efforts to bring his department within a civil service system, the fact that deputies received paychecks signed by members of the Board of Commissioners, and the fact that they received the same fringe benefits as other County employees gave rise to an expectation and mutual understanding that they were covered, like other County employees, by the Personnel Manual. On this basis, they argue that they have a property interest in continued employment with the County protected by the federal Constitution.

---

4. Section 15–16–23 provides in pertinent part that "[s]heriffs are authorized in their discretion to appoint one or more deputies."

Although Plaintiffs' assertions may appear reasonable, only applicable state law determines whether Plaintiffs have a property interest in their employment. This Court is not at liberty to disregard the controlling and unequivocal provisions of Georgia law. Under Georgia law, sheriffs have absolute discretion in the hiring and the firing of their deputies. O.C.G.A. § 15–6–23. The only process by which this discretion may be limited is through compliance with § 36–1–21(b). Section 36–1–21(b) must be strictly construed because it derogates the sheriff's common law powers. No genuine issue of material fact exists regarding Sheriff Compton's failure to fully and adequately comply with this statute. State law provides no other avenue for Plaintiffs to argue they have a protected property interest. *See Taylor v. Bartow County*, 860 F.Supp. 1526, 1537 (N.D.Ga. 1994) ("Mutual understandings cannot create a property interest contrary to state law." (citations omitted)). Accordingly, Defendants are entitled to summary judgment against Plaintiffs on their procedural due process claim.

### Plaintiffs' First Amendment Claims

▬▬ Plaintiffs claim they were terminated because of public statements made to the Jefferson County electorate and because of their failure to support Defendant Hutchins. Plaintiffs allege their termination for

these reasons was unconstitutional because public employment may not be conditioned on requirements that violate the First Amendment. *See Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The protection the First Amendment affords in this regard is not absolute, however. Whether adverse employment action runs afoul of the First Amendment involves, generally speaking, balancing the relevant interests of the State in taking the challenged action against the employee's freedom of expression or association. *See Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

▬▬ Two separate lines of cases in which a public employee's termination implicates First Amendment rights have evolved: those cases involving the employee's freedom of expression, and those cases involving the employee's freedom of political association. *Terry v. Cook*, 866 F.2d 373 (11th Cir.1989). In this case, the parties disagree about whether Plaintiffs' First Amendment claim is properly analyzed under the Supreme Court's freedom of expression or political patronage cases.[5]

▬▬ To scrutinize Defendant Hutchins' termination of Plaintiffs under the First Amendment, however, presupposes that Plaintiffs were employed as deputies for De-

---

5. Plaintiffs claim Defendant Hutchins refused to retain them simply because they failed to support his campaign, which unconstitutionally elevated political support to a job requirement. *See generally Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Where a public employee is terminated *solely* because of affiliation with a certain political party, the political patronage cases are implicated. *McCabe v. Sharrett*, 12 F.3d 1558, 1565 (11th Cir.1994). These cases focus on the belief, not the conduct, of the employee. *Id.* at 1567. Under the *Elrod–Branti* analysis applicable to political patronage cases, the foremost inquiry centers on "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518, 100 S.Ct. at 1295; *see also Elrod*, 427 U.S. at 372, 96 S.Ct. at 2689 (limiting patronage dismissal to only policy-making positions). If the court considers political loyalty an appropriate job requirement, then a patronage dismissal would survive First Amendment scrutiny.

Defendants, on the other hand, claim Plaintiffs' activities should be analyzed as a freedom of expression case. Defendants allege Plaintiffs engaged in name calling, defaced and destroyed campaign literature and signs, published false information concerning Defendant Hutchins' record as tax commissioner, and attempted to incite racial tensions in the community. These allegations focus on Plaintiffs' overt expressive conduct and, thus, would usually implicate the freedom of expression analysis set forth in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In *Pickering* the Supreme Court required balancing "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568, 88 S.Ct. at 1734–35. This *Pickering* balance is a question of law. *McCabe*, 12 F.3d at 1570 n. 15. If the court determines the government employer's interest outweighs a plaintiff's right to free speech, the challenged adverse action would survive First Amendment scrutiny.

fendant Hutchins. Under Georgia law, sheriffs have absolute and unfettered discretion to appoint and terminate their deputies. O.C.G.A. § 15–16–23; *Wayne County v. Herrin,* 210 Ga.App. 747, 437 S.E.2d 793 (1993) (deputies serve at the sheriff's pleasure). Deputies are considered the agents of their sheriffs when discharging their official duties. *Archer v. Aristocrat Ice Cream Co.,* 87 Ga.App. 567, 74 S.E.2d 470 (1953). Sheriffs must give a bond of $25,000, upon which sheriffs and their sureties are liable for the official acts of deputies. O.C.G.A. § 15–16–5. Also, deputies are required to take the same oath of office as their principals. O.C.G.A. § 45–3–7. Because of the nature of this relationship and the unfettered discretion granted to the sheriff, the term of office as deputy expires with the term of the deputy's sheriff.

█ In this case, Plaintiffs' term of office as deputies expired with the term of their principal, Sheriff Compton. The deputies could not have become the agents of Defendant Hutchins until such time as Defendant Hutchins reappointed them and they took the same oath of office as he did.[6] As discussed above, the newly elected sheriff has absolute and unfettered discretion to reappoint a predecessor's deputies. To force a newly elected sheriff to retain deputies based on the First Amendment analysis as discussed above would limit the sheriff's discretion in derogation of this right. Absent a "civil service system," there is nothing in the United States Constitution, the Georgia Constitution, or the statutes of Georgia which requires a new sheriff to appoint as his own deputies (1) his political opponents or (2) those chosen as deputies by his predecessor.

Accordingly, I find the application of any First Amendment analysis in this case could potentially limit the ability of Defendant Hutchins to hire at his pleasure. Common sense dictates that Defendant Hutchins could not unconstitutionally terminate a position in which Plaintiffs did not have a right. Thus, such analysis would be improper. Because Plaintiffs' First Amendment concerns cannot compromise Defendant Hutchins' absolute right to hire whom he chooses, Defendants are entitled to summary judgment on Plaintiffs' First Amendment claim.

## Plaintiffs' COBRA Claim

In their Amended Complaint, Plaintiffs claim they were denied continued medical coverage as provided under the Comprehensive Budget Reconciliation Act (COBRA), 29 U.S.C. §§ 1161, *et seq.*[7] However, this claim actually lies under the Public Heath Service Act (PHSA), 42 U.S.C. §§ 300bb–1, *et seq.,* which is the statutory counterpart to COBRA that covers public employees.

Under the PHSA, Jefferson County's plan administrator was required to notify Plaintiffs within fourteen days of their terminations on January 1, 1993, that they qualified for continuing coverage of health care benefits. *See* 42 U.S.C. § 300bb–6. It is undisputed that Plaintiffs were not so notified. After Defendants answered Plaintiffs' Original Complaint on September 25, 1993, the County acknowledged its failure to provide formal notice of their PHSA rights. Thereafter, on October 21, 1993, the County offered Plaintiffs the opportunity to apply for continued coverage, provided they paid the premiums retroactive to January 1, 1993. Only Plaintiff Hudson exercised his rights to continue the health insurance coverage. Plaintiff Hudson paid the retroactive premiums in a lump sum, the same total amount he would have paid on a monthly basis.

█ Plaintiffs admit they were offered the proper coverage. Thus, the substantive merits of the COBRA/PHSA claim are not at issue in this case. However, because the County did not offer the continued coverage

---

6. Although a deputy is required to take the oath, failure to take such oath does not render the acts of the deputy invalid because Georgia law recognizes the "de facto officer." O.C.G.A. § 45–3–10; *Hartshorn v. Bank of Gough,* 17 Ga.App. 483, 87 S.E. 720 (1916). However, the sheriff must admit or recognize the acts of the deputy, or hold him out to the public as a deputy, as proof of the appointment. *See Matthis v. Pollard,* 3 Ga. 1, 3 Kelly 1 (1847).

7. COBRA provides a business tax deduction to private employers who have group health plans which include a continuation option of health benefits to employees after an unexpected change in status, such as termination. S.Rep. No. 146, 99th Cong., 2d Sess. 363 (1986), *reprinted in* 1986 U.S.C.C.A.N. 322.

until the present suit was filed, Plaintiffs seek attorney's fees for the efforts expended in obtaining such coverage.

The PHSA allows aggrieved individuals to bring an action for the enforcement of their rights and "appropriate equitable relief." 42 U.S.C. § 300bb–7. Because Plaintiffs have obtained the offer of coverage they were due, I find they have been made whole and are not entitled to equitable relief. Three of the four Plaintiffs did not even accept the continued coverage and therefore, they were not injured by the failure to notify. Plaintiff Hudson had not suffered any harm by the delay in notification because there was no lapse in coverage or increased cost to him. Furthermore, the amount of attorney fees actually incurred in procuring an offer of coverage is quite minimal in comparison to the constitutional issues involved in this case; indeed, it was time wasted for the three Plaintiffs who refused the coverage anyway. Thus, an award of attorney's fees would not serve to compensate Plaintiffs in any manner.

Essentially, Plaintiffs' request for attorney's fees is a request to assess penalties against the County. The decision to assess penalties is within the sound discretion of this Court. It must be noted that Plaintiffs' Amended Complaint, filed after the date of the offer of benefits, realleged that Defendants had failed to offer continued coverage. It appears that both parties have participated in procedural posturing to some degree before settling this coverage dispute. However, there is no evidence that the County was purposefully being deceitful or malicious in its failed communication of coverage, or that the County has a habit of failing to notify its employees of the PHSA benefits. Finally, the award of attorney's fees would not be a significant deterrent to the County because the money would be taken from the public coffers. Accordingly, Defendants are entitled to summary judgment on the COBRA claim.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** on Plaintiffs' procedural due process claim in Count III of their Amended Complaint. The motion is also **GRANTED** on

Plaintiffs' First Amendment claims in Count I of their Amended Complaint. Therefore, Defendant Hutchins' motion for summary judgment in his individual capacity on the basis of qualified immunity need not be addressed. Finally, Defendants' Motion for Summary Judgment on Plaintiffs' COBRA claim is **GRANTED** as well.

Plaintiffs' state constitutional claims mirror their federal claims. Plaintiffs admit in their supplemental brief that the appropriate standards to apply to the state constitutional claims are the federal standards outlined above. Accordingly, Plaintiffs' state constitutional claims fail as a matter of law for the same articulated reasons.

Having granted summary judgment in favor of Defendants' on all claims, Plaintiffs' Amended Complaint is **DISMISSED** in its entirety. The clerk is instructed to CLOSE this case and **ENTER FINAL JUDGMENT** in favor of Defendants. In light of the decision not to award attorney's fees on Plaintiff Hudson's PHSA claim, I will employ the discretion afforded by Federal Rule of Civil Procedure 54(d)(1). I decline to assess costs against Plaintiffs. Accordingly, each of the parties shall bear their own costs.

**ORDER ENTERED.**