**Robert F. MANSFIELD, Plaintiff,**

v.

**The CHICAGO PARK DISTRICT GROUP PLAN, a group health plan, and The Chicago Park District, an Illinois municipal corporation, Defendants.**

**No. 95 C 3217.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 5, 1996.

Patricia Wrona, Walsh & Wrona, Chicago, IL, for Robert F. Mansfield.

Nelson A. Brown, Jr., Chicago, IL, for Chicago Park District.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Robert Mansfield ("Mansfield") is suing the Chicago Park District and the Chicago Park District Group Plan ("the Park District"). Count one of Mansfield's two-count complaint alleges that defendants violated the Consolidated Omnibus Budget Reconciliation Act ("COBRA") amendments to both the Employee Retirement Income Security Act ("ERISA") and the Public Health Service Act ("PHSA"). In count two, Mansfield contends that the Park District's breach of these federal statutes constitutes a violation of his civil rights under 42 U.S.C. § 1983. Pursuant to Federal Rules of Civil

Procedure 12(b)(6), 12(f), and 8(c),[1] the Park District moves to strike and dismiss Mansfield's first amended complaint. For the reasons set forth below, the Park District's motion is granted in part and denied in part.

### Background

The following facts are taken from Mansfield's First Amended Complaint. Mansfield was an employee of the Chicago Park District and a participant in the Park District's group health plan. In May 1993, Mansfield became eligible to retire from his employment with the Park District. On May 4, 1993, Mansfield met with Mrs. Josephine Rankins, an agent of the Park District and the Park District's group health plan. The purpose of this meeting was to finalize arrangements for Mansfield's retirement. During their meeting, Rankins did not inform Mansfield of his right under COBRA to continue his health care coverage when he retired. Instead, Rankins advised Mansfield that his health care coverage would expire June 30, 1993. Mansfield retired from the Park District on May 31, 1993. After Mansfield retired, the defendants again failed to notify him verbally or in writing of his COBRA right to continue his health care coverage under the Park District's health care plan.

On October 3, 1993, Mansfield suffered a serious heart attack while in Honduras, Central America. Mansfield's heart attack caused him to be hospitalized in Honduras, then transported to a hospital in Tampa, Florida. Mansfield's condition required him to remain in the Tampa hospital throughout October and November 1993 to undergo various medical and surgical procedures. Since November 1993, Mansfield has remained in the care of physicians in Tampa as an outpatient and must travel there regularly to receive medical care. Because Mansfield has had no health insurance coverage since June 30, 1993, he has had to bear the costs of his medical treatment.

### Analysis

The Park District moves to dismiss Mansfield's first amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F.Supp. 1399, 1406 (N.D.Ill. 1996) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990)). Therefore, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631, 632 (7th Cir.1996) (citation omitted). The court will dismiss a claim only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." *Colfax*, 79 F.3d at 632 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

The defendants' attack Mansfield's complaint on several fronts. Because resolution of all issues depends on whether or not Mansfield may pursue his ERISA claim, the court addresses that question first.

### I. ERISA

Mansfield's complaint seeks relief under both the Employee Retirement Income Security Act ("ERISA") and the Public Health Security Act ("PHSA"). The Park District argues that the PHSA governs this suit and that ERISA does not apply. The Park District asserts that only the PHSA applies because Mansfield's claims are based on a "governmental plan" that is specifically exempted from ERISA coverage. The court agrees with the Park District and therefore dismisses those portions of Mansfield's complaint seeking relief under ERISA.

In 1986, Congress enacted COBRA to provide temporary health insurance continuation coverage through amendments to both ERISA and the PHSA. *Williams v. New Castle Cty.*, 970 F.2d 1260, 1264 (3d Cir.

---

**1.** Although defendants do not mention Federal Rule of Procedure 12(f) in their motion, the court presumes that their motion to strike is premised upon that rule.

1992). These amendments were motivated by Congress' concern over "reports of growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide health care to those who cannot afford to pay." H.R.Rep. No. 99–241, 99th Cong., 2d Sess. 44, *reprinted in* 1986 U.S.C.C.A.N. 579, 622.

■ COBRA amended both ERISA and the PHSA by adding essentially identical continuation coverage and notification provisions. *See* 29 U.S.C. §§ 1161 to 1168 (ERISA); 42 U.S.C. §§ 300bb–1 to –8 (PHSA). Under these provisions, group health plans must make continuation coverage available for qualified beneficiaries who would lose coverage as a result of a qualifying event provided he or she elects the coverage within the election period. *Williams*, 970 F.2d at 1264. Generally, continuation coverage under either ERISA or the PHSA must extend for at least eighteen months after the date of the qualifying event. *E.g.*, 42 U.S.C. 300bb–2.

■ Unlike the PHSA, ERISA specifically exempts any "governmental plan" from its employee benefit plan provisions. 29 U.S.C. § 1003(b)(1). A governmental plan is defined as any plan "established or maintained for its employees by the Government of the United States, by the Government of any State or political subdivision thereof, or by any agent or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). The PHSA, however, fills this gap in ERISA by ensuring continuation coverage to beneficiaries of a plan maintained by "any State that receives funds under this chapter, by any political subdivision of such a State, or by any agency or instrumentality of such a State or political subdivision." 42 U.S.C. § 300bb–1; *Williams*, 970 F.2d at 1264.[2] In other words, the PHSA guarantees continuation coverage to governmental plan beneficiaries specifically excluded by ERISA.

■ "Governmental plans" exempted under ERISA are "either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *Shannon v. United Serv. Auto. Ass'n*, 965 F.2d 542, 548 (7th Cir.1992) (quoting *NLRB v. Natural Gas Util. Dist.*, 402 U.S. 600, 602–603, 91 S.Ct. 1746, 1748–1749, 29 L.Ed.2d 206 (1971)). In this case, the Park District that administers the defendant plan was created by an act of the Illinois state legislature. *See* Chicago Park District Act, 70 ILCS 1505 *et seq.* Thus, under *Shannon*, the Park District plan is a governmental plan because it is administered by an entity that was created directly by the state. Because the plan is a governmental plan, it is exempt from ERISA coverage. Accordingly, the PHSA governs this lawsuit and those parts of Mansfield's complaint that seek relief under ERISA are dismissed.

■ Notwithstanding ERISA's clear exclusion of governmental plans, 29 U.S.C. §§ 1003(b)(1) & 1002(32), Mansfield urges the court to ignore the statute and apply ERISA to his case. According to Mansfield, since the COBRA amendments to ERISA and the PHSA " 'contain the same continuation of coverage rules' ... then COBRA should provide the same remedies and protections to a covered employee whether that employee works in the public or private sector." (Pl.Resp. at 9 (citation omitted)). Mansfield adamantly pursues his ERISA claim because ERISA provides significantly greater remedies than does the PHSA. For example, under ERISA, a plaintiff may obtain attorneys' fees, money damages, and fines up to $100 per day.[3] 29 U.S.C. §§ 1132(c), (g), & (l). In contrast, a plaintiff's remedy under the PHSA is limited to

---

**2.** Although the record does not establish whether Illinois receives such funds, the court assumes that it does. (Neither party states otherwise.)

**3.** Mansfield exhibits confusion over the availability of a jury trial under ERISA, as well as his adversary's position on the issue. (*See* Pl.Resp. at 10; Defs. Mot. at 8–9). Although ERISA is silent on the issue, courts have found that ERISA does not provide plaintiffs with jury trials. *Sullivan v. LTV Aerospace & Defense Co.*, 82 F.3d 1251, 1258 (2d Cir.1996); *Spinelli v. Gaughan*, 12 F.3d 853, 858 (9th Cir.1993); *Wardle v. Central States*, 627 F.2d 820, 830 (7th Cir.1980).

"appropriate equitable relief." 42 U.S.C. § 300bb-7. Mansfield argues that this difference in remedies is unfair to public sector employees and could not have been intended by Congress. (Pl.Resp. at 10). The court does not agree with Mansfield's argument.

When courts interpret statutes, the initial inquiry is the language of the statute itself. *United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116, 3120, 92 L.Ed.2d 483 (1986). If the language on the face of the statute is clear and unambiguous, courts will not look to legislative history determine the intent of Congress. *Barnhill v. Johnson*, 503 U.S. 393, 401, 112 S.Ct. 1386, 1391, 118 L.Ed.2d 39 (1992); *In re McFarland*, 84 F.3d 943, 947 (7th Cir.1996). There is nothing ambiguous about ERISA's exemption of governmental plans. In fact, ERISA defines the governmental plan exemption with exceptional clarity.

Similarly, the COBRA amendments to the PHSA expressly recognize ERISA's exclusion of governmental plans and serve to fill this gap. *See* 42 U.S.C. § 300bb-1 (the PHSA governs group health plans of state governments); *Williams*, 970 F.2d at 1264 (PHSA intended to fill gap created by ERISA's governmental plan exemption). The PHSA is also unambiguous about the remedy it provides. Under 29 U.S.C. § 300bb-7, any person who is aggrieved by the failure of a state to comply with the requirements of the PHSA "may bring an action for appropriate equitable relief." *Id.* The PHSA therefore establishes a remedy for those who have been harmed by a state's failure to properly administer a group health plan.

That ERISA provides more extensive remedies to private sector employees than the PHSA provides to their public sector counterparts reflects a decision by Congress, and it is not this court's obligation to question that decision. While this decision may seem unfair to public sector employees, Congress had legitimate reasons for fashioning different remedies in ERISA and the PHSA. Congress considered applying ERISA to public pension plans, but "was reluctant to interfere with the administration of public retirement plans due to the resulting federal-

ism implications." *Hightower v. Texas Hosp. Ass'n*, 65 F.3d 443, 448 (5th Cir.1995); H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 4639, 4647. Because Congress excluded public sector employees from ERISA coverage, Mansfield's ERISA claim must be dismissed.

Finally, the parties devote portions of their briefs debating the availability of money damages under the PHSA. It is clear that the PHSA provides only "equitable relief," 42 U.S.C. § 300bb-7, and that equitable relief typically does not include money damages. *See, e.g., Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1491 (7th Cir.1996) (monetary damages do not constitute "equitable relief" under ERISA). However, equitable relief may include an award of money as restitution for pecuniary losses caused by a defendant, where such relief is necessary to make a plaintiff whole. *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.*, 57 F.3d 1255, 1267–69 (3d Cir.1995); *Reich v. Continental Casualty Co.*, 33 F.3d 754, 755–56 (7th Cir.1994); *UIU Severance Pay Trust Fund v. Local Union No. 18–U*, 998 F.2d 509, 512–13 (7th Cir. 1993). Restitution includes the amount of medical expenses that were not reimbursed because of a plan's failure to notify a beneficiary of continuation coverage rights under COBRA. *Hamilton v. Mecca, Inc.*, 930 F.Supp. 1540, 1553–54 (S.D.Ga.1996). In this case, Mansfield may recover restitution for out of pocket medical expenses attributable to the Park District's alleged failure to notify him of his COBRA rights. Thus, the court dismisses all portions of Mansfield's complaint that seek monetary damages exceeding his out of pocket medical expenses that would have otherwise been covered by the defendant plan.

## II. STATUTE OF LIMITATIONS

Having established that ERISA does not apply in this case, the court turns to the Park District's argument that Mansfield's PHSA claim is barred by the statute of limitations. Because the PHSA does not have a statute of limitations, the court should normally apply the most analogous state limita-

tion period. *Dell v. Board of Educ.,* 32 F.3d 1053, 1058 (7th Cir.1994). "More recently, however, the Supreme Court has noted that federal courts may also borrow from another federal statute if that statute is clearly more analogous to the legislation than the state statutes." *Id.* (citing *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 171–72, 103 S.Ct. 2281, 2294–95, 76 L.Ed.2d 476 (1983).

■ The Park District argues that since Mansfield's suit is against an arm of the state, the most analogous statute is the Illinois Local Government and Local Governmental Employees Tort Immunity Act, 745 ILCS § 10/8–101 *et seq.* ("Tort Immunity Act"). Under the Tort Immunity Act, a tort suit against a local governmental entity must be initiated one year after injury. *Id.* Thus, the Park District maintains that Mansfield did not timely file his lawsuit on May 31, 1995 for medical costs he incurred during 1993. The court does not agree with the Park District's assertion that the Tort Immunity Act is the most analogous statute.

■ ERISA is by far the most analogous statute to the PHSA. Thus, under *Dell,* 32 F.3d at 1058, the court will decide the PHSA statute of limitations question by using ERISA analysis. Like the PHSA, ERISA does not have an express limitations provision. When courts enforce limitations periods in ERISA cases, they characterize ERISA lawsuits as a contract action. *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1137 (7th Cir.1992); *Schroeder v. Phillips Petroleum Co.,* 970 F.2d 419, 420 (8th Cir.1992) (per curiam); *Meade v. Pension Appeals and Review Comm.,* 966 F.2d 190, 194–95 (6th Cir. 1992). Accordingly, courts look to the state statute of limitations for breach of written contracts. *Tolle,* 977 F.2d at 1137; *Schroeder,* 970 F.2d at 420; *Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan,* 713 F.2d 247, 250–52 (7th Cir.1983). Illinois enforces a ten year statute of limitations on written contracts. 735 ILCS 5/13–206 (1995). Mansfield's complaint, filed just over two years after his cause of action accrued, falls well within this ten year period, thus his PHSA claim is not time-barred.

■ In any event, the Illinois Tort Immunity Act applies only to lawsuits brought under Illinois common law or an Illinois statute. 745 ILCS 10/8–101. Since Mansfield's claim is brought pursuant to the PHSA, a federal statute, the Tort Immunity Act does not apply to this case. Similarly, as Mansfield points out, application of the Tort Immunity Act is limited to tort actions. *Firestone v. Fritz,* 119 Ill.App.3d 685, 75 Ill.Dec. 83, 456 N.E.2d 904 (1983). Mansfield's PHSA claim is based in contract, not tort; thus the Illinois Tort Immunity Act does not apply to this case. The court therefore denies the Park District's motion to dismiss Mansfield's First Amended Complaint on statute of limitations grounds.

## III. JURY TRIAL AND ATTORNEY FEES

The Park District's motion also seeks to dismiss those parts of Mansfield's complaint that seek a jury trial and attorney fees under the PHSA. Mansfield admits that "[i]f the Court finds that ERISA has absolutely no applicability to his COBRA claims, Mansfield does not contest that generally trial by jury is not available on purely equitable claims under federal law." (Pl.Resp. at 11 n. 4). The court agrees with and appreciates Mansfield's candid admission.

■ Research reveals no case law determining whether PHSA plaintiffs may obtain a jury trial. However, case law under ERISA is instructive. Both ERISA section 502 and the PHSA provide only "equitable relief." 42 U.S.C. § 300bb–6 (PHSA); 29 U.S.C. § 1132(a)(3)(B) (ERISA). As noted earlier, the "equitable relief" provision in ERISA does not provide jury trials for plaintiffs. *Sullivan v. LTV Aerospace & Defense Co.,* 82 F.3d 1251, 1258 (2d Cir.1996); *Spinelli v. Gaughan,* 12 F.3d 853, 858 (9th Cir. 1993); *Wardle v. Central States,* 627 F.2d 820, 830 (7th Cir.1980). Following the logic employed by these courts holding that 29 U.S.C. § 1132(a)(3)(B) does not provide jury trials for ERISA plaintiffs, the court concludes that the PHSA does not afford jury trials.

■ The Park District also seeks to dismiss that portion of Mansfield's complaint that requests attorney fees. While ERISA contains an express provision that entitles prevailing plaintiffs to their attorney fees, 29 U.S.C. § 1132(g), the PHSA does not. This court will not read an attorney fees provision into the PHSA where none exists. At least one other court has also declined to allow attorney fees in a PHSA case. *See Brett v. Jefferson Cty.*, 925 F.Supp. 786, 793–94 (S.D.Ga.1996) (refusing to exercise inherent equitable powers to award attorney fees). That ERISA provides for attorney fees while the PHSA does not reflects congressional intent. ERISA demonstrates that where Congress wants to impose attorney fees on employers, it knows how to do so. In this case, absent any statutory or contractual authorization, the court presumes that the traditional American rule applies and the litigants must pay their own attorney fees. *Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–46, 36 L.Ed.2d 702 (1973). Accordingly, that part of Mansfield's First Amended Complaint that seeks attorney fees is dismissed.

## IV.  SECTION 1983

The Park District argues that Mansfield's section 1983 claim must be dismissed because the PHSA provides "the exclusive federal remedy to vindicate governmental employees' COBRA rights." (Defs. Mot. at 5). Although the question is a difficult one, the court agrees with the Park District and therefore dismisses Mansfield's section 1983 claim.

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980), the Supreme Court held that section 1983 provides a cause of action for violations of federal statutes as well as the Constitution. The Court has gone on to recognize two exceptions to this rule: (1) if the statute does not create "enforceable rights, privileges, or immunities within the meaning of section 1983," *Wilder v. Virginia Hosp. Assoc.*, 496 U.S. 498, 508, 110 S.Ct. 2510, 2516, 110 L.Ed.2d 455 (1990), or (2) where "Congress has foreclosed such enforcement of the statute in the enactment itself." *Wright v. Roanoke Redevelopment and Housing Auth.*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). The Park District invokes the second exception and argues that Congress has foreclosed enforcement of section 1983 for PHSA violations.

■ This court must "not conclude lightly that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right." *Smith v. Robinson*, 468 U.S. 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984). The burden is on the Park District to show "by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." *Wright*, 479 U.S. at 423, 107 S.Ct. at 770. Here, the Park District has failed to point out an express provision in the PHSA precluding resort to section 1983. In the absence of such a provision, private enforcement is "foreclosed only when the statute itself creates a remedial scheme that is 'sufficiently comprehensive . . . to demonstrate congressional intent to preclude the remedy of suits under § 1983.'" *Wilder*, 496 U.S. at 520, 110 S.Ct. at 2523 (quoting *Middlesex Cty. Sewerage Auth. v. National Sea Clammers Assn.*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981)). Thus, the issue is whether the PHSA's private enforcement scheme is sufficiently comprehensive to demonstrate congressional intent to preclude concurrent liability under section 1983.

The PHSA establishes a private judicial enforcement scheme that allows those who have been deprived of their rights to file suit

in district court and obtain appropriate equitable relief. 42 U.S.C. § 300bb–1. Under this judicial enforcement mechanism, aggrieved individuals may acquire injunctive relief as well as monetary restitution. The existence of this private judicial remedy evidences congressional intent to supplant a section 1983 remedy. *Wright*, 479 U.S. at 427, 107 S.Ct. at 772. Accordingly, Mansfield's section 1983 claim must be dismissed.

On only two occasions has the Supreme Court found a remedial scheme established by Congress sufficient to displace the remedy provided by section 1983. *Wilder*, 496 U.S. at 521, 110 S.Ct. at 2523 (discussing the two cases). In both of those cases, the Court focused on the fact that the statute at issue established private judicial enforcement of those rights. *See Wilder*, 496 U.S. at 521, 110 S.Ct. at 2523 (two cases where section 1983 action was foreclosed hinged on statutory availability of private judicial enforcement); *Wright* 479 U.S. at 427, 107 S.Ct. at 772 (private judicial enforcement scheme forecloses section 1983 claim); *see also Victorian v. Miller*, 813 F.2d 718, 723 (5th Cir. 1987) (reviewing Supreme Court cases and explaining that the existence of private judicial remedy is determinative fact). The Court's holding in these cases turned on the fact that a judicial enforcement mechanism constituted a remedial scheme sufficiently comprehensive to demonstrate congressional intent to preclude the remedy of suits under § 1983.

In *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981), the Supreme Court held that the comprehensive enforcement scheme in the Federal Water Pollution Control Act ("FWPCA") precluded private reliance on section 1983. 453 U.S. at 20, 101 S.Ct. at 2626. Central to the Court's determination in *National Sea Clammers* was the existence of citizen suit provisions in the FWPCA. *Id.* The Court reasoned that "[i]t is hard to believe that Congress intended to preserve the § 1983 right of action when it included so many specific remedies, including the two citizen-suit provisions." *Id.*

Similarly, in *Smith v. Robinson*, 468 U.S. 992, 1010–1011, 104 S.Ct. 3457, 3467–3468, 82 L.Ed.2d 746 (1984), the Court held that an elaborate administrative scheme in the Education of the Handicapped Act manifested Congress' intent to foreclose private reliance on § 1983 as a remedy. *Id.* In so holding, the Court stressed that the administrative remedy culminated in a right to judicial review. *Id.* The Court also emphasized that allowing the plaintiff to go forward with a section 1983 claim in that case would result in a circumvention of the administrative and statutory remedies already in place. *Id.* at 1012, 104 S.Ct. at 3468.

With these cases as background, it is apparent that the PHSA's judicial enforcement provision forecloses Mansfield's section 1983 claim. The PHSA's judicial enforcement scheme empowers individuals who have been deprived of their COBRA rights to file suit in district court and obtain appropriate equitable relief. 42 U.S.C. § 300bb–1. Under this enforcement mechanism, aggrieved individuals may acquire injunctive relief as well as monetary restitution. This private judicial remedy evidences congressional intent to supplant a section 1983 remedy. *Wright*, 479 U.S. at 427, 107 S.Ct. at 772.

Additionally, as the Court noted in *Smith*, section 1983 claims should not proceed if it would allow plaintiffs to circumvent clear statutory policy. 468 U.S. at 1012, 104 S.Ct. at 3468. That is precisely what would happen in this case if Mansfield's Section 1983 claim were to proceed. The PHSA's equitable relief provision prohibits jury trials, and attorney fees are not recoverable under the PHSA. *Brett*, 925 F.Supp. at 793–94. A section 1983 claim would undermine both of these policies. It is well-settled that section 1983 plaintiffs are entitled to both attorneys fees, 42 U.S.C. § 1988; *Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223, 227 (7th Cir.1995), as well as jury trials. *Crawford v. Edmonson*, 764 F.2d 479, 480 (7th Cir.1985). Allowing a plaintiff to advance both a PHSA claim and a section 1983 claim would allow the plaintiff to employ section 1983 to circumvent the policies implied in the PHSA.

In contrast to *National Sea Clammers* and *Smith,* the Supreme Court has held that a section 1983 remedy is *not* foreclosed by statutes that did *not* provide judicial enforcement mechanisms. In *Wilder,* 496 U.S. at 521–22, 110 S.Ct. at 2523–24, for example, the Court ruled that the Medicaid Act does not preclude section 1983 claims. *Id.* The Court noted that the Medicaid Act only required the states to adopt limited regulations. *Id.* The *Wilder* Court specifically distinguished *National Sea Clammers* and *Smith* on the grounds that the "Medicaid Act contains no comparable provision for private judicial or administrative enforcement." *Id.*

Similarly, in *Wright,* 479 U.S. at 427, 107 S.Ct. at 772, the Court declared that section 1983 action could be maintained for violation of the United States Housing Act. *Id.* The Court again distinguished *National Sea Clammers* and *Smith* because the statutes in those cases "themselves provided for private judicial remedies thereby evidencing congressional intent to supplant the § 1983 remedy. There is nothing of that kind in the Brooke Amendment or elsewhere in the Housing Act." Thus, the Court concluded that the absence of private judicial enforcement precluded a finding of a sufficiently comprehensive enforcement scheme to foreclose a section 1983 claim. *Id.*

■ Although the question is a close one, the court concludes that the PHSA provides the exclusive federal remedy for Mansfield to vindicate his COBRA rights and dismisses Mansfield's section 1983 claim.

### Conclusion

For reasons set forth above, defendants' motion to strike and dismiss plaintiff's first amended complaint is granted in part and denied in part. Count II is dismissed entirely. The portions of count I seeking relief under ERISA are stricken, but the portions seeking relief under the PHSA remain. Plaintiff's requests for a jury trial and for attorney fees are stricken, and his request for monetary damages is limited to restitution for certain out of pocket medical expenses. The date for filing any motion related to this ruling will run from the date this Memorandum Opinion and Order is entered.

The parties are instructed to discuss settlement of plaintiff's remaining PHSA claim prior to the next court date.